## THEODORE L. SMITH *vs.* JOHN KING.

New Haven & Fairfield Cos., Jan. T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and PRENTICE, Js.

Where in an action for a malicious prosecution the defendant claims in his defense that he acted in good faith and upon evidence of the plaintiff's guilt which he believed to be reliable, he is limited in his proof to such evidence as he had before him at the time he procured the institution of the criminal proceedings, and he cannot avail himself of evidence that he afterwards found.

And it does not affect the case that the complaint in the action alleges both the institution of the criminal proceedings and their prosecution afterwards.

Whether, if such later evidence had been offered in mitigation of damages it would not have been admissible: *Quære.*

Whether, where a party in his testimony denies a certain signature before the court to be his own, the court has authority to require him to write his name in open court, in order that the jury may compare the writings: *Quære.* The court inclined to the opinion that it has such power, to be exercised in its sound discretion.

But where the disputed writing had so faded out that it could not be traced, so that it could not be seen by the jury but only described to them, it was held that it was not a case for such an order.

While it is a general rule that an incorrect statement of the law in one portion of a charge will not be cured by a correct statement of it in another, yet where a charge contained a single incorrect statement of

the law inadvertently made, but so plainly and repeatedly stated the correct principle that to suppose the jury could have failed to understand it would be to impute to them a want of ordinary capacity, a new trial was refused.

Where the defendant in an action for a malicious prosecution claims that he acted upon the advice of counsel, it must appear that the counsel was such as he had no reason to suspect of prejudice or bias, and in whose judgment he was justified in reposing confidence.

[Argued January 18th—decided March 6th, 1893.]

ACTION for a malicious prosecution ; brought to the Court of Common Pleas in New Haven County, and tried to the jury before *Deming, J.* Verdict for the plaintiff, and appeal by the defendant for errors in the rulings and charge of the court.

*V. Munger* and *C. J. Atwater*, for the appellant.

*W. H. Williams*, for the appellee.

FENN, J. This action, for a malicious prosecution of the plaintiff, upon a charge of burning a private building, not a dwelling, belonging to the defendant, was tried to a jury in the Court of Common Pleas for New Haven County, and resulted in a verdict and judgment for the plaintiff. The defendant appealed to this court. Many errors, both in relation to evidence and to the charge of the court to the jury, are assigned. We will consider such as are most important as briefly as possible consistently with clearness.

The finding discloses that the parties were the owners of adjacent lands in Seymour ; that on October 1st, 1891, two ice houses on the defendant's land were discovered to be on fire ; that the plaintiff and defendant had been acquainted for many years ; that recently many controversies had arisen between them, and that they were not on friendly terms ; that at the time of the fire the defendant was absent, and remained so until October 3d, 1891, on which day, while still absent, he was first informed of the fire by his son, and thereupon immediately stated publicly that the fire was caused

by the plaintiff; and that thereafter he sought only to find and procure evidence against the plaintiff, and which would tend to prove the plaintiff's connection with the fire. On the witness stand, in chief, and to his counsel's question, he testified that he had " every reason to believe it was he, only he; nobody else but him." He stated this as his reason;— " We have been on such unfriendly terms for these last eighteen years that he has repeatedly annoyed me and caused me trouble during that period, and I know of no other person that I believe would injure me in the destruction of my property." The complaint of the grandjuror, on which the warrant against the plaintiff issued, was dated October 6th, 1891. The finding states that the defendant, for the purpose of proving that he acted in good faith and had reasonable ground for believing the plaintiff to be guilty of setting his building on fire, offered to prove what he did in the way of getting further and additional testimony after the prosecution had been begun and also to prove statements made to him 'by third persons after the prosecution was begun, and from that time down to and including the day of the trial, and to show that during all that time the defendant was actuated by an honest belief in the plaintiff's guilt, as tending to disprove the allegations contained in the plaintiff's complaint. And for that purpose his counsel asked the defendant the following question :—" Subsequently to that time what further steps did you take to find further information, if any ?" This, as well as similar questions, as to what further information he did obtain afterwards connecting the plaintiff with the burning, were objected to and excluded. The defendant duly excepted, the court saying to the defendant's counsel,—" You may offer all legitimate evidence of the guilt of Mr. Smith." Thereupon the defendant was asked whether his ice houses were insured; whether his dwelling house was insured; where he got his insurance policy, and what was the damage done him by the burning. The first two questions were answered in the negative, the witness adding that he got his dwelling insured October 6th, 1891. The last two questions were objected to and excluded,

the defendant duly excepting. The defendant having fur-
ther testified that he had seen wagon tracks since October 6th,
on an old road leading into the road to the ice house, as well
as upon the latter road, his counsel offered to prove by him
that within a week after the commencement of the prosecu-
tion he had a conversation with one Carpenter, since de-
ceased, in which Carpenter told him that he had seen the
plaintiff, on the night of the fire, coming out from this old
road. This testimony, on objection, was excluded, to which
the defendant duly excepted. The defendant also offered
to prove that after the process was issued and the prosecu-
tion begun, he submitted to Mr. Atwater, an attorney in
Seymour, the testimony that had been submitted to the
grandjuror, and thereupon Mr. Atwater advised him, or gave
him his opinion, as to the sufficiency of the testimony, and
thereafter acted as his counsel, and that he was influenced
as to his subsequent action by the advice of counsel, of
which Mr. Atwater was one. This, on objection, was ex-
cluded, and exception duly taken. So also testimony con-
cerning a conversation with a witness named Llewellyn,
after October 6th, concerning a two-gallon oil can, which
Llewellyn had testified that he had seen about two years
previous on the plaintiff's premises, and which the defend-
ant claimed to have found near the ice houses, was excluded,
the defendant duly excepting.

On the foregoing rulings twelve of the assignments of
error are based. In reference to the offered evidence relat-
ing to the plaintiff's conduct after making the complaint,
this court has said, in speaking of similar evidence in *Thomp-
son* v. *Beacon Valley Rubber Co.*, 56 Conn. R., 499:—" The
want of probable cause must be shown by facts and circum-
stances existing, and information which came to the defend-
ant, at the time the prosecution was instituted. Facts
subsequently transpiring, and information subsequently re-
ceived, could not, from the nature of the case, influence his
action at that time." And other authorities are to the same
effect, namely, that evidence in favor of either plaintiff or
defendant, as to good faith or the want of it, must be con-

fined to the knowledge, or means of knowledge, which the defendant had before he acted, and by which his action was influenced. This the present defendant does not deny as a general proposition, but contends that the case as presented by the pleadings was not the ordinary action for a malicious prosecution, as understood by the courts, but that it was far different; that the plaintiff did not claim to recover damages solely for the institution of the prosecution. The complaint alleges, in substance, not only the arrest of the plaintiff on October 6th, and his being held to bail to appear for trial before the justice, but that the defendant appeared before the justice, during the pendency of the complaint, on divers days named, down to and including January 16th, 1892, and charged the plaintiff with having committed the crime of which he was so accused, and that he made the charge and prosecuted the same from motives of malice. And so the defendant insists that the damages claimed and recovered were not merely for the institution of the prosecution but also for the continued prosecution of it. The defendant cites Newell on Malicious Prosecution, § 12, in which it is said:—" In actions for malicious prosecution, where malice is an essential element, the burden of proving which is upon the plaintiff, it is as a general rule sufficient to prove that the action was commenced maliciously. It is not necessary to sustain the action to show that the suit was maliciously continued, but the fact of such continuance may be shown for the purpose of increasing the damages." And so the defendant insists that there is a distinction between the institution of an action and its continuance, and that, since the continuance of want of probable cause, or of bad faith and malice, might be shown by the plaintiff to increase damages, information acquired pending the prosecution, creating probable cause or inducing honest belief and consequent good faith, ought to be admitted to disprove malice and to reduce damages. One difficulty however in supporting this contention is, that it is perfectly evident that it is entirely an after-thought, and that the rejected evidence was offered for no such purpose as that for which it is now claimed that it

was admissible. It was not offered in mitigation of damages, but in bar or defence of the action. There is no intimation in the defendant's pleadings that any claim would be made that his conduct, or the motives for his conduct, changed after the commencement and during the continuance of the prosecution. The first defense is that of denial; the second, justification from the beginning. Neither is there any such hint in the defendant's testimony. In addition to the statement·which we have already repeated, he testified that as soon as he learned of the fire he believed the plaintiff guilty, and made no effort ·to find, and did not look for, any evidence against any one but the plaintiff; that he was influenced in his conduct by prejudice, and that he could not distinguish between the effect on his mind of the prejudice, and the effect of finding the can referred to and of a handkerchief hereafter to be referred to; and finally the finding itself states the purpose for which the rejected testimony was offered to have been to prove good faith and reasonable ground of belief and disprove the allegations of the plaintiff's complaint. Had the evidence been distinctly offered for the purpose for which it is now claimed to have been admissible, it probably would not have been rejected. If it had been, a very different question would then have been presented to us. ·This disposes of the first twelve assignments of error; for the rulings concerning the insurance policy, and the extent of damage, need no vindication.

The defendant claimed to have proved that on the morning of October 6th an old handkerchief was found in the saw dust, within the ice house, near where the fire had been started; that it was rolled up as if it might have been used as a stopper for the can mentioned; and that upon its being unrolled there was found upon its border the name " T. L. Smith." It appeared that on October 6th this name showed plainly and distinctly and had that appearance at the trial of the plaintiff before the justice on the criminal charge; but that when the handkerchief was produced before the jury, on the trial of this case in the court below, the name had nearly faded out, and its location was only found with

great difficulty. The plaintiff having afterwards testified that the handkerchief did not belong to him, and that he had no knowledge of it, the defendant's counsel, upon cross-examination, asked the plaintiff: " Will you just print your name upon a piece of paper, ' T. L. Smith ? ' " which being objected to, his counsel again said : " My question is, will you, with a pen, write, or rather print, the name of ' T. L. Smith ' on a piece of paper ? " The plaintiff's counsel said " I instruct my client to refuse to do it peremptorily ; " whereupon the court remarked—" I do not think the court has any authority to direct the witness to do it; " to which ruling the defendant duly excepted.

Although we cannot see how this episode could have injured the defendant, since the peremptory refusal to comply with the request of his counsel seems better calculated to prejudice the jury against the plaintiff and to injure his case than any result produced by compliance could have been, we do not, of course, intend to rest our decision on any such ground. The authority and duty of a court, under proper circumstances, to direct a person denying in testimony his signature to a document, to write his name in open court, in order that the jury may compare such writing with the disputed signature, is a somewhat controverted question, looking at cases in other jurisdictions, and the question has never been expressly decided in our own jurisdiction. We are inclined to think it to be the better opinion, supported by the weight of authority, that the court does possess such power, and that its exercise is best committed to the sound discretion of the trial court, to be asserted or withheld as the circumstances may seem to such court to warrant. Inasmuch however as the court below in this case placed its refusal to order the plaintiff to write, not on discretion, but on the want of power, conveying in some measure the implication that had it deemed itself possessed of such power it would have exercised it, the action of the court, not having been based upon discretion, cannot be justified on that ground. There is another ground, however, upon which such action seems to us fully warranted. The facts as found

indicate that no foundation was laid upon which to demand such an experiment. No reason for it existed. The defendant had testified to the finding of an old handkerchief with the name " T. L. Smith," presumably in printed letters, upon it. That name, very plain and distinct at one time, had become so obliterated and nearly faded out that even its location could be found only with great difficulty. It seems fair, therefore, to assume that any inference that it was the plaintiff's handkerchief, growing out of his name being upon it, would arise from testimony as to what had appeared, plain and distinct, at a former time, rather than from an inspection of what had now so nearly faded as to leave so little trace that with difficulty its former location could be shown. Such being the evidence on the part of the defendant, the plaintiff merely testified that the handkerchief did not belong to him and that he had no knowledge of it. No one appears to have claimed that the name, once distinct, was written or printed by him, or that it resembled his writing. Nor does it appear that such name was shown to him, or even that it was sufficiently legible so that it could have been. Nor did he testify anything in regard to it, except inferentially from the above statement. What possible reason was there for requiring a signature, to be used by the jury, in comparison with another signature not before them, which no longer existed, which no one had ever identified as bearing the plaintiff's characteristics, and not in writing but in print? Under the circumstances it seems clear to us that the trial court did not err.

The remaining assignment of error in reference to evidence was not pressed, and we will not consider it further than to say that the ruling of the court was correct. This disposes of all the questions in relation to evidence.

The court, in its charge to the jury, said: " The burden is also upon the plaintiff to satisfy the jury that in causing the prosecution the defendant was prompted by malice, but malice may be inferred by the jury from the proof of a want of probable cause. If, therefore, want of probable cause has been shown in this case, malice is sufficiently

proven." It is claimed that this is wrong; that the court
could not pass upon the sufficiency of the evidence, or say
to the jury that certain evidence sufficiently proved one of:
the main facts in the case; that although the jury might:
infer malice, they were not bound to do so, and that the,
want of probable cause did not dispense with proof of malice..
It is insisted that the court by this charge withdrew from,
the jury the question of malice, and made it depend entirely;
upon the question of a want of probable cause, and so that
that was the only question left for the jury to decide. If
this was the case we do not hesitate to say that the charge
was erroneous and that a new trial should be granted. But
we do not think this to be a right construction of the charge
or that the jury could have so understood it. The entire
charge is given in the finding, and the context aids us in
arriving at the real meaning of the court. The jury were
first told repeatedly, and in several forms, that there must
be both malice and want of probable cause; that they must
concur to support the action. Then the court said: " Let
there be ever so much malice, if there was probable cause
the prosecution was justifiable. And though there was no
probable cause, yet if there was not malice, the defendant
would not be liable in an action for malicious prosecution."
Then immediately follows the language quoted and com-
plained of by the defendant. And then, after a full and cor-
rect definition of malice, both express and implied, the court
adds: " Malice is always a question for the jury, and is to
be determined by them from all the evidence in the case."
Now it seems evident that when the jury were told, practi-
cally in three consecutive sentences, first, that want of prob-
able cause without malice would not support an action ;
second, that from want of probable cause malice might be
inferred and that such inference would be sufficient proof;
and third, that malice was always a question for the jury to
be determined by them from all the evidence in the case—
the jury could not have understood the court to make a
statement in the middle proposition entirely inconsistent
both with .the one which preceded and the one which fol-

lowed. To do this they would be required to construe the the words, " malice *may* be inferred," as meaning "*must* be inferred," for only thus could the words following, "malice is sufficiently proven," be understood as meaning sufficiently to *require*, rather than only to *justify*, such inference. We think the latter the fair import of the language, and that it must have been so understood by the jury. And so construed the statement is unquestionably correct.

The court also said to the jury : " If the defendant by his evidence has satisfied you that he acted in good faith, or if he has satisfied you that he had probable cause for making the accusation against the plaintiff, then your judgment should be for the defendant." It is insisted that this improperly shifts the burden of proof upon the defendant. And taken alone it certainly would seem to do so. But by looking again at the charge as a whole, it is manifest that the separation of the clause from the context and reading it alone does not do justice to the court, and that, although the language quoted was hardly apt, it could not, in view of what preceded and of what followed, have been understood by the jury in such a way as to prejudice the just rights of the defendant. The court, when using the language excepted to, was speaking of the defendant's claims as based upon his own evidence, presented and admitted in support of his special defense ; that is, the testimony of the defendant, as a witness in his own behalf, as to the search which he made, the proof against the plaintiff which he found, and the advice of counsel, which he thereupon sought and received, and upon which he claimed to have acted in good faith in instituting the prosecution against the plaintiff; and in referring to such evidence of matters peculiarly within the knowledge of and resting upon the testimony adduced by the defendant, the court said: " The defendant insists that the evidence was sufficient to warrant any judicious man in coming to the conclusion that the plaintiff was guilty, and that in all that he has done, in causing the arrest and prosecution of the plaintiff, he has not been actuated by malice, but has acted in good faith and upon the honest belief that

the plaintiff was guilty." And then the court added the language complained of, meaning clearly enough that if the jury believed the defendant's statements as to what actuated his conduct, he was entitled to their verdict; while in other parts of the charge, before and after, in at least eight places, the jury were told, correctly and clearly, where the burden of proof rested, that is, upon the plaintiff; the closing paragraphs of the charge being a three-fold repetition of such statement in most explicit language. We therefore think there is no error in this regard.

It also appears from the record that the court erroneously used the word "or" where "and" should have been used instead, saying, in effect, that if the jury found malice or want of probable cause, their verdict should be for the plaintiff. And it is insisted that this error is not cured by the fact that in other parts of the charge the court used language that did correctly state the law. It is impossible, without quoting almost the entire charge of the court, to say more than this, that while we should be sorry to give any sanction to the proposition, as a general one, that incorrect statements of law in one portion of a charge may be cured by correct statements in another portion, (the contrary would be the rule,) yet the charge before us is so exceptional, in the prominence given by repetition to the correct principle, that to hold that the jury could have been misled by what was evidently a slip of the tongue or pen on the part of the court, would be to impute to the members of the jury such a want of ordinary capacity as would prove them unfit for service as triers in courts of justice. Without meaning to establish a precedent, we decline to make such imputation.

There is but a single further assignment of error which appears to warrant consideration. The court, complying with the request of the defendant, charged the jury as follows : " If the jury find from the evidence that the defendant, before he commenced the prosecution in question, fully, fairly and truthfully stated all the facts and circumstances in relation to the alleged crime to the counsel upon whose judgment he had a right to rely, and that such counsel

advised him that he had reasonable cause to institute the criminal proceeding against the plaintiff, and that the defendant, in good faith, acted upon such advice, then the plaintiff cannot maintain this action, regardless of the question whether the plaintiff was guilty of the crime with which he was charged, and the jury should find for the defendant;" adding however to the request the following:—" I instruct you that that request is law, simply reminding you of what I have previously said, that the counsel consulted must be unbiased and unprejudiced against the party concerning whom the complaint is made; that all the facts must have been stated to the counsel; and that the party stating them must have acted honestly in the case." The defendant insists that this charge was not adapted to the case; that there was no evidence to show that counsel consulted by him were biased or prejudiced against the plaintiff. We think however there was evidence of a double character, proper for the jury to consider on this point, though concerning the weight of such evidence we express no opinion. The evidence consisted, first, of the fact that the counsel whom the defendant claimed to have first and mainly consulted had acted as his attorney in much litigation, including suits between the plaintiff and defendant; and second, it was claimed that the proofs against the plaintiff, which the defendant stated that he submitted to his counsel, were so insufficient as to lead to a natural and necessary inference that an attorney giving such advice upon such evidence, if any attorney did so give it, thereby proved himself to be biased and prejudiced.

We cannot, therefore, say that the language used by the court, properly understood as meaning that the counsel consulted must have been such as, under the circumstances, the defendant had no reason to suspect of prejudice or bias, and in whose judgment he was justified in reposing confidence as impartial, was improper.

There is no error in the judgment complained of, and a new trial is denied.

In this opinion the other judges concurred.